C. T. DAY v. ASHEVILLE TOBACCO BOARD OF TRADE, A CORPORATION.

(Filed 20 April, 1955.)

**1. Agriculture § 11—**

Members of a tobacco board of trade organized and existing by virtue of G.S. 106-465 are deemed to have consented to all reasonable rules and regulations pertaining to the business which have been properly determined and promulgated for the purposes expressed in the charter and by-laws of the board of trade.

**2. Agriculture § 9—**

**3. Same: Constitutional Law § 17—Regulation for allotment of selling time to new warehouses held not in restraint of trade.**

G.S. 106-465 does not authorize tobacco boards of trade to promulgate rules and regulations in restraint of trade or to control prices, but a rule requiring any member desiring to operate a new warehouse or a warehouse which had not been operated during the preceding season to give timely notice of such intention, and allotting to such new operator selling time in proportion to its size in relation to the other warehouses, with further provision that if such new warehouse is larger in size than the average of all warehouses operating on that market, such new warehouse should not be allotted selling time for that portion of its size in excess of the average size of all of the warehouses operating on the market, *is held* reasonable, fair and equitable, and not a regulation in restraint of trade.

**4. Same—**

A tobacco board of trade is not required to adopt any particular plan for the allotment of selling time to its respective warehouse members, it being required only that the standard be reasonable and equitable.

**5. Agriculture § 11: Notice § 4—**

Where a member of a tobacco board of trade is present and participates in a meeting at which its by-laws are amended and does not make any protest as to the regularity or validity of the meeting or the notice thereof, he waives any defect of notice.

**6. Appeal and Error § 1—**

Where an appeal is subject to dismissal for failure to comply with the rules of court, but the case involves matters of public interest, the Supreme Court of its own motion may elect to treat the appeal on its merits.

BARNHILL, C. J., and DEVIN, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Nettles, J.,* in Chambers at Asheville, November 1954 (order signed 8 December, 1954), BUNCOMBE Superior Court.

Civil action (1) to enjoin defendant "from attempting to enforce that portion of its by-laws adopted October 2, 1954, relating to selling time and number of baskets allotted to plaintiff," and (2) to command and direct defendant "to revert to the former custom and practice of allocating selling time on the basis of floor space of the various tobacco warehouses operating on the Asheville market, including those of plaintiff."

The record on this appeal is too voluminous to admit of more than brief recital of essential data. It discloses (1) that summons for defendant was duly issued and served; and that at the same time upon verified complaint, used as an affidavit for injunctive relief, the Honorable Dan K. Moore, Judge holding the regular courts of the 19th Judicial District of North Carolina, signed an order directing defendant to appear before Honorable Zeb V. Nettles, Resident Judge of the 19th Judicial District, at a stated time at the courthouse in Asheville, N. C., and show cause, if any it may have, why the injunctive relief prayed for in the verified complaint should not be granted to plaintiff herein; and (2) that defendant filed a verified answer to be used as an affidavit.

When the cause came on for hearing Judge Nettles entered an order in which, after reciting that he had considered at length the affidavits and evidence in the matter and arguments of counsel, he made findings of fact in pertinent part substantially as follows:

"1. That the defendant is a non-stock corporation acting in the capacity of a tobacco board of trade in the City of Asheville, in which burley leaf tobacco is sold in warehouses at auction, with such power as is granted by law, including the authority granted by G.S. 106-465, and the plaintiff C. T. Day is and at the times hereinafter mentioned was a member of that Association.

"2. That the Asheville Tobacco Market's selling season for the sale of burley tobacco normally runs five or six weeks, and the 1954-55 selling season began on November 30, and will probably consist of five or six weeks.

"3. That during the selling season of 1953-54, and for some years prior thereto, there were eleven warehouses operating in the City of Asheville, with a total warehouse floor space of 475,182 square feet, and that during the 1953-54 season there was sold on the Asheville Market 9,550,016 pounds of tobacco; that the floor space of the warehouses

mentioned in this paragraph will accommodate 24,722 baskets of tobacco.

"4. That two sets of buyers have been assigned to the market and the total permitted selling time for the Asheville Market for the 1954-55 selling season is allotted by the Burley Tobacco Warehouse Association, which comprises the burley tobacco belt in the southeastern section of the United States, such selling time will consist of a total of 8 hours selling time per day, and the total allotted baskets per day for the Asheville Market has been allotted at 2880 baskets.

"5. That during the 1953-54 selling season, and for some years prior thereto, the warehouses of the Asheville Market had unanimously agreed upon the allotment among themselves of the total allotted selling time and the total allotted number of baskets to be sold per day.

"6. That on November 13, 1953, and prior to the time when the plaintiff had given information that he intended to build a new warehouse, the defendant passed the following resolution relative to new warehouses which might be built in Asheville, namely: 'For a warehouse to be eligible for a sale the following season, the owner or operator should give written notice, with specifications of his warehouse, to the Supervisor before April 1st.'

"7. That the resolution mentioned in the preceding paragraph was reasonable under all the circumstances then and there existing, and in order for the warehousemen on the Asheville Market to make proper and suitable arrangements for the succeeding season.

"8. That on the 2nd day of January, 1954, all of the warehousemen operating in Asheville at said time, entered into an unanimous agreement for the allotment of the total selling time and the total number of baskets per day allotted for the Asheville Market; which agreement, however, contained the following provision: 'Should an outside firm come into the Asheville tobacco market as a new operator, this agreement would be null and void.' and said agreement, together with said proviso, was incorporated into the minutes of the defendant at its meeting on January 2, 1954."

9. That on January 14, 1954, the Asheville Tobacco Board of Trade met in session, and, at request of all the operators of tobacco warehouses on the Asheville Tobacco Market, amended its by-laws in respect to method of allocating selling time,—and making provision for warehouses erected thereafter to participate in the allocation of selling time, and the extent of such participation in so far as floor space is a factor in the allocation of selling time.

And the findings of fact continued:

"10. That in March, 1954, the plaintiff purchased a tract of land and sometime thereafter began the erection of a tobacco warehouse in

Asheville, which had not been completed at the time of the institution of this action, and which contains, or will contain, approximately 125,-000 square feet of floor space, which said warehouse has a fire wall dividing floor space.

"11. The plaintiff has not at any time complied with the provisions or regulations passed by the defendant on November 13, 1953, hereinbefore quoted, nor of the regulation of January 14, 1954, hereinbefore quoted, not having given written notice with specifications of his warehouse to the Supervisor before April 1, 1954, or at any time up to the hearing of this cause, and not having applied in writing to the Sales Committee or the Secretary of the defendant for inclusion of said warehouse in any schedule of sales on or prior to the 1st day of March preceding the opening of the marketing season in which the applicant desires to participate, or at any time prior to October 2, 1954.

"12. That the building by the plaintiff of a new warehouse adding an additional 125,000 square feet of floor space had no relation to the normal needs of the tobacco market in Asheville and was for the purpose of securing approximately one-fourth of all the selling time and of the number of baskets for sale per day, which had been allotted to the Asheville market.

"13. That under date of September 20, 1954, the plaintiff received a registered letter from Jeter P. Ramsey, Secretary-Treasurer of the Asheville Tobacco Board of Trade, reading as following: (Deleting immaterial matter)

" 'Mr. C. T. Day
　Greenville, N. C.

" 'Dear Sir:

" 'The Asheville Tobacco Board of Trade, Inc., will hold an important meeting Saturday morning, October 2, 1954, commencing at 9:00 A. M. in the Vanderbilt Room in the George Vanderbilt Hotel, at Asheville, North Carolina, for the transaction of important business, as well as such business as may come before the members.

" 'This is your notice and request that you be present.

　　　　　　　　　　　Respectfully
　　　　　　　　　　　　　　(s)　Jeter P. Ramsey
　　　　　　　　　　　　　　Secretary and Treasurer.

" 'P.S. If you cannot come, I would appreciate you filling out the enclosed proxy and returning same to me. J. P. R.'

"A similar notice was sent to all of the members of the defendant.

"14. That pursuant to the call of the special meeting of the defendant, plaintiff attended the same, and in addition to plaintiff those attending such meeting were . . . operators of warehouses in Asheville, . . . the same individuals who petitioned the defendant in January, 1954, to amend the then existing by-laws, . . . The following members were represented at said meeting by proxies duly executed and filed with the Secretary: (Six named).

"15. That a meeting of the members of the defendant was held on October 2, 1954, at which time by-laws which had been in the process of preparation by Mr. S. G. Bernard, attorney for the defendant, for a long period prior thereto, were enacted, which by-laws, among other things, contained the following: (a) All warehouses selling leaf tobacco on the Asheville Market for any given year may agree unanimously in writing upon the allocation of selling time among such warehouses and, if so, such agreement shall be recognized and observed by the Asheville Tobacco Board of Trade and said warehouses shall be bound by said agreement for the selling season to which said agreement relates.    (b) In the event no unanimous agreements of all such warehouses shall be entered into far enough in advance of any selling season for the Asheville Tobacco Board of Trade to put such agreement into effect by allocating selling time in accordance with such agreement, selling time of the warehouses on the Asheville Market shall be allocated according to a schedule prepared and adopted by the Board of Trade in accordance with the following requirements, to wit: selling time shall be allotted to each warehouse on the Asheville Market in such proportion as the sales of tobacco of producers thereof in such warehouses were to the total sales of producers on the Asheville Market for the year preceding the allocation; provided, however, regular selling time in each warehouse shall not vary more than three and one-half per cent from the selling time allocated to a warehouse for the preceding season.

" 'Provided that in the event of a new warehouse and/or a warehouse which did not operate on the Asheville Tobacco Market during the preceding season claiming selling time, then the selling time allotted to such new warehouse or warehouses not operating the preceding season claiming selling time shall be allotted on an average and in proportion with the amount of selling time available to all warehouses operating on the Asheville Tobacco Market; provided further each such new warehouse and/or warehouses which did not operate the preceding season is smaller in size than the average of all warehouses comprising the Asheville Tobacco Market, then the said selling time shall be allocated according to the proportion of its size in relation to all other warehouses; provided further that if said new warehouse or warehouses which did not operate the preceding season is larger in size than the

average of all warehouses operating on the Asheville Tobacco Market, such warehouse or warehouses shall not receive any consideration and be allocated selling time for the size thereof in excess of the average of all warehouses and shall in no event be allocated more than its equal pro rate share of selling time as is determined by the number of warehouses operating on the Asheville Tobacco Market.' (c) The total remaining selling time allotted to the market after selling time has been allotted to a new warehouse and/or warehouses which did not operate on the market during the preceding season shall be allocated to the remaining houses which did operate the preceding season in accordance with the provisions of the first paragraph of subsection (b) above.

" 'Section 2. Any individual, firm or corporation being a member of the Board of Trade and desiring to operate a warehouse on the Asheville Tobacco Market for the auction sale of leaf tobacco must give notice in writing to the Sales Supervisor of his, their or its intention to do so on or before the first Saturday in April prior to the opening of the Asheville Tobacco Market for such selling season, or such person, firm or corporation failing to give such notice will not be allotted a space on the sales cards for such selling season and will not be permitted to operate such warehouse under the rules and regulations of the Asheville Tobacco Board of Trade.

" 'Section 3. The Sales Committee with the aid of the warehousemen comprising membership in the Board of Trade and of the Supervisor of Sales shall annually not later than the first Saturday in April prior to the opening of the selling season on Asheville Tobacco Market prepare and draft a sales card or schedule of the order of sales for each selling season and shall furnish each member with a copy of same; provided the sales cards and schedules of the order of sales for the 1954-55 selling season shall be prepared immediately following the adoption of these By-Laws. The plan of the order of sales shall be arranged so that each operating warehouse shall be allotted their selling time. Any person or firm operating more than one warehouse may allot his selling time to one or more of his warehouses. The minimum speed of selling shall be maintained at 360 piles or baskets of tobacco per hour. If any warehouse conducting a sale shall fall behind in the time prescribed and allotted as above stated as much as thirty minutes, such warehouse shall automatically lose its sale. The sale and the order of sales as herein provided for shall be regulated in all respects by the Supervisor.' and that at the same meeting the defendant made the allotment of selling time and baskets to warehouses which appears on the following list, in compliance with said by-laws, which included the new warehouse built by the plaintiff: The floor space of each warehouse as found by the court appears in the last column—

DAY *v.* BOARD OF TRADE.

|  | Number of Baskets | Percentage of Selling Time | Square Footage |
|---|---|---|---|
| Carolina | 317 | 11.01 | 55,072 |
| Bernard Walker #1 | 501 | 17.40 | 91,941 |
| Dixie #2 | 95 | 3.30 | 17,275 |
| Planters #1 | 388 | 13.47 | 67,450 |
| Walker | 251 | 8.72 | 46,124 |
| Bernard Walker #2 | 167 | 5.76 | 31,157 |
| Dixie #1 | 184 | 6.39 | 33,484 |
| Bernard Walker #3 | 205 | 7.12 | 38,270 |
| Planters #2 | 265 | 9.20 | 46,040 |
| Liberty | 46 | 1.60 | 8,640 |
| Big Burley | 221 | 7.70 | 39,729 |
| Day | 240 | 8.33 | 125,000 |
|  | 2880 | 100.00 | 600,182 |

"16. That the plaintiff C. T. Day was present at the said meeting of October 2, 1954, and participated therein and made certain suggestions relative to changes in said by-laws, some of which changes were accepted and approved, and was informed during the meeting that he would have an opportunity to consult with an attorney if he so desired, and for that purpose the meeting would be adjourned, and the plaintiff in reply stated for the meeting to proceed, and the plaintiff did not make any protest as to the regularity or validity of the meeting, or the regularity or validity of the notice of said meeting. He did, however, object and protest to the by-laws and voted 'No' thereon.

"17. That during the pendency of this action and before the signing of the judgment as appears herein, a regular stated meeting of the defendant was held on Saturday, November 27, 1954 at 2 o'clock P. M., at the time and place provided in the by-laws of the corporation, which were in existence at all times, and that at said regular stated meeting the following resolution was unanimously adopted by all members present at said meeting and voting, namely: 'RESOLVED: That the By-Laws of the Asheville Tobacco Board of Trade, Inc. adopted at a special meeting of the corporation October 2, 1954, appearing in the minutes of said meeting be, and the same are hereby approved, ratified and in all things confirmed.' Mr. Cannon, bookkeeper for and representative of the plaintiff, was present at said meeting and did not vote for or against the above resolution.

"18. That at the time of the hearing of this action the warehousemen operating warehouses in the City of Asheville had made many commitments to many farmers, giving them assurances of the time when they

could depend upon their tobacco being sold, and had made their schedules of sales so as to carry out these commitments and that the carrying out of these commitments to the farmers and the prearranged schedules of sales are important business functions, beneficial to the producers of tobacco, as well as to the Asheville Market generally, and important for the orderly conduct of the Asheville Tobacco Market.

"19. That the inconvenience and damage that will result to the other members of the defendant, as well as to the producers of tobacco and the Asheville Tobacco Market generally will be much greater than the benefit which would accrue to the plaintiff from the issuance of an injunction at this time.

"And the court being further of the opinion that the defendant should not be restrained as prayed in the complaint,

"IT IS, THEREFORE, ORDERED AND ADJUDGED, in the discretion of the court, that the application of the plaintiff for a temporary injunction be, and the same is hereby denied."

To the signing of the foregoing order, plaintiff objects and excepts.

The record also shows (1) that plaintiff requested certain findings of fact, and conclusions of law, all of which, except such as are included in findings of fact and conclusions of law made by the Judge were denied— and that plaintiff excepted to each ruling. (2) That plaintiff objected to findings of fact numbers 7, 10, 11, 12, 17, 18 and 19, and excepted to the overruling of each, and (3) that plaintiff excepted to the signing of the judgment, and appeals to Supreme Court.

*J. Y. Jordan, Jr., and Albion Dunn for plaintiff, appellant.*
*Williams & Williams for defendant, appellee.*

WINBORNE, J. Is there error in the denial of plaintiff's prayer for injunctive relief? We hold there is not error.

Attention is directed to the case of *Cooperative Warehouse, Inc., v. Lumberton Tobacco Board of Trade, Inc., ante,* 123. While the particular method of allotting selling time in that case is not the same as here, the fundamental principles declared and applied there are determinative here.

In that case this Court in effect holds that the articles of association for the purposes expressed in the charter and by-laws of a tobacco board of trade, organized and existing under and by virtue of G.S. 106-465, constitute a contract between it and its members, which imposes certain obligation on the members among themselves and with respect to the corporation, and that, hence, as a consequence of membership in the corporation for mutual benefit, each member is deemed to have consented to all reasonable rules and regulations pertaining to the business

which have been properly determined and promulgated. This holding is applicable to case in hand. And plaintiff, as a member of the Asheville Tobacco Board of Trade, Inc., is deemed to have consented to all reasonable rules and regulations pertaining to the business of selling tobacco at auction on warehouse floors.

Also, in the *Cooperative case, supra,* this Court holds, in effect, that the authority granted to tobacco boards of trade, under and by virtue of the provisions of G.S. 106-465, as amended, to make reasonable rules and regulations for the economical and efficient handling of the sale of leaf tobacco at auction on the warehouse floors in the towns and cities in North Carolina in which an auction market is situated, is sufficiently broad to include the authority to make reasonable rules and regulations in respect to "allotment of sales time." What is said there relative thereto is applicable here. Therefore, this Court now holds in the case in hand that the by-laws of the Asheville Tobacco Board of Trade, Inc., adopted at, and pursuant to the meeting on 2 October, 1954, are within the power and authority so vested in it.

True, the act, G.S. 106-465, does not authorize the organization of any association having for its purpose the control of prices or the making of rules and regulations in restraint of trade, but the findings of fact do not reveal any invasion of this limitation.

Moreover, the court below finds as a fact that plaintiff was present at the meeting of 2 October, 1954, and participated therein, and did not make any protest as to the regularity or validity of the meeting, or of the notice thereof. This fact dispenses with notice to him. *Hill v. R. R.,* 143 N.C. 539, 55 S.E. 854.

And there is nothing in the findings of fact tending to show that the Asheville Tobacco Board of Trade, Inc., in considering subject of selling time was required to adopt any particular plan. It would seem to follow, therefore, that the standard of the rules and regulations adopted would be gauged by their reasonableness. And the rule by which the allotment was made to plaintiff by the Board appears fair and equitable. Indeed, it does not appear that there is any restraint of trade in the rule.

Hence, in the light of the facts found by the court below, the conclusion reached appears to be correct.

It is noted that defendant moved to dismiss the appeal for failure of plaintiff to comply with Rules 19 (3) and 28 of this Court in respect to assignments of error. But since the case is of public interest, the Court has of its own motion elected to treat the appeal on its merit, for which reason the motion to dismiss is not considered, and is denied.

The judgment below is
Affirmed.

BARNHILL, C. J., and DEVIN, J., took no part in the consideration or decision of this case.